Argued and submitted October 1, reversed in part; otherwise affirmed December 22, 1993, reconsideration denied February 16, petition for review denied May 10, 1994 (319 Or 80)

Doug MAAG,
Warner Maag, Bob Maag,
Emil Maag and Joe Arriola,
*Respondents,*

*v.*

ORCHARDS WATER COMPANY,
*Appellant,*

*and*

STATE OF OREGON
WATER RESOURCES DEPARTMENT,
*Respondent.*

(90-07-23,664E; CA A74127)

865 P2d 500

Stephen M. Bloom argued the cause for appellant. With him on the briefs was Kottkamp & O'Rourke.

Larry A. Sullivan argued the cause for respondents Doug Maag, Warner Maag, Bob Maag, Emil Maag and Joe Arriola. With him on the brief was Sullivan & Powell.

John T. Bagg, Assistant Attorney General, argued the cause for respondent Water Resources Department. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

## LEESON, J.

In this case, plaintiffs seek a declaration that their water rights to Willow Creek are superior to those of Orchards Water Company (defendant).[1] Defendant counterclaims, seeking declaratory relief limiting plaintiffs' duty of water. The trial court granted only plaintiffs' requested declaration. Defendant appeals, assigning error to the grant of plaintiffs' request for a declaratory judgment, and to the denial of its request. On *de novo* review, ORS 19.125(3), we hold that neither request for declaratory judgment should have been granted. Only plaintiffs' claim requires discussion.

Willow Creek flows southeasterly from its source in the Blue Mountains to its confluence with the Malheur River near Vale. This case turns on the construction of two early cases of the Supreme Court determining the water rights to Willow Creek. In 1915, the Supreme Court issued the first decree, *In re Willow Creek*, 74 Or 592, 144 P 505, 146 P 475 (1915) (*Willow Creek I*), determining the rights to the natural flow of the stream during the irrigation season. The Water Board issued water rights certificates accordingly. It issued certificates 1606 and 1607 to plaintiffs' predecessors-in-interest, Norwood and the Oxmans. It issued certificate 1627 to defendant's predecessor-in-interest, Willow River Land & Irrigation Company (Willow River Land).

In *Willow Creek I*, the court deferred determination of the water rights associated with a water storage and irrigation facility that Willow River Land was in the process of constructing. 74 Or at 664-65. The facility was built to impound water that otherwise would have flowed through the drainage basin unappropriated during the non-irrigation seasons. Willow River Land had entered into contracts obliging it to construct and maintain the facility, and to deliver stored water from it during the irrigation season. Proceedings were later held to determine the relative rights of the parties making claims to the stored water. *In re Water Rights of Willow Creek*, 119 Or 155, 236 P 487, 236 P 763, 237 P 682, 239 P 123 (1925) (*Willow Creek II*).

---

[1] Plaintiffs also sought an injunction against the Water Resources Department. That claim is not a part of this appeal.

By the time *Willow Creek II* was decided in 1925, Willow River Land had been dissolved in bankruptcy, and defendant had been organized to hold title to the stored water facility for the benefit of those entitled to delivery of the water. Defendant held no rights to the beneficial use of the stored water. Moline Farms Company (Moline) and/or Magenheimer had succeeded to Willow River Land's certificate 1627 water rights. 119 Or at 194.

In *Willow Creek II*, Moline and Magenheimer claimed that they also had acquired rights to the stored water from Willow River Land. The court held that defendant was required to distribute all of the water due under the stored water contracts before making any distributions of stored water to Moline and Magenheimer. 119 Or at 197-98. All of the stored water rights adjudicated in *Willow Creek II*, however, are junior to the certificate 1606, 1607 and 1627 rights.

Defendant subsequently acquired the certificate 1627 water rights.

In this case, plaintiffs argue that, notwithstanding that some of the certificate 1627 rights are prior to their certificate 1606 and 1607 rights, defendant is precluded from exercising those rights. They contend that, under *Willow Creek II*, defendant may not exercise its certificate 1627 water rights before it discharges its obligations under the stored water contracts, which are junior to plaintiffs' certificate 1606 and 1607 rights. Therefore, plaintiffs maintain, defendant may not exercise its certificate 1627 rights until after plaintiffs' certificate 1606 and 1607 water rights are satisfied.

Defendant responds that *Willow Creek II* was concerned only with the rights to the water stored in the storage and irrigation facility, and did not affect other water rights held by the parties. It argues that, although *Willow Creek II* prohibits it from asserting rights to the stored water before satisfying all contractual obligations, that decision does not affect its rights under certificate 1627, because certificate 1627 is a right to the natural flow, rather than a right to stored water.

The only water rights at issue in *Willow Creek II* were the rights to the stored water. The court forbade defendant from delivering any stored water to Moline or

Magenheimer before discharging its obligations under the stored water contracts. The decree did not affect Moline and Magenheimer's ability to assert other water rights that they held independent of the storage facility, including the certificate 1627 rights. The court stressed that "[t]here is no attempt to question [*Willow Creek I*]. None of the parties to this suit has sought to in any way modify that decree." *Willow Creek II, supra,* 119 Or at 186. On rehearing, the court emphasized again that "[t]here was no intention to disturb [the] vested rights as adjudicated in [*Willow Creek I*]." *Willow Creek II, supra,* 119 Or at 206.

The direct flow water rights of certificate 1627 were not diminished by their conveyance to defendant. There is no conflict between defendant's obligations under the *Willow Creek II* decree and its direct flow rights under certificate 1627. Defendant must give preference to the stored water contracts in its distribution of stored water. It may exercise its certificate 1627 direct flow rights according to the priority dates stated on that certificate. Plaintiffs do not contend that certificate 1627 has ever been forfeited, canceled or abandoned. It is, therefore, conclusive of defendant's rights to the direct flow. ORS 537.270.

Declaratory judgment for plaintiffs reversed; otherwise affirmed.